IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01793-CMA-KLM

CONCEALFAB CORPORATION, a Colorado corporation,

Plaintiff,

v.

SABRE INDUSTRIES, INC., a Delaware corporation, and MIDWEST UNDERGROUND TECHNOLOGY, INC., an Illinois corporation,

Defendants.

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff ConcealFab Corporation ("ConcealFab"), by its attorneys at Silver & DeBoskey, A Professional Corporation, and pursuant to Fed.R.Civ.P. 56(c) and CMA Civil Practice Standard 7.1E, respectfully submits its Motion for Partial Summary Judgment ("Motion") as follows:

## I. INTRODUCTION

The parties to this civil action assert claims and counterclaims against one another arising out of a failed transaction to merge their two competing businesses. The parties first negotiated and signed a Term Sheet outlining the key categories and terms from which a definitive agreement would be finalized. They then negotiated and signed a Licensing Operating Agreement ("LOA") that would permit the parties to operate jointly for a period of at least six months and perhaps as long as a year before the merger would be finalized. The parties, in fact, operated jointly from March 13, 2015, when the LOA was fully executed, to June 3, 2015, when Defendants Sabre

Industries, Inc. and Midwest Underground Technology, Inc. (collectively, "Sabre") terminated the LOA and, by extension, the Term Sheet. ConcealFab alleges in this lawsuit that Sabre never intended to complete the merger contemplated by the Term Sheet, and devised the LOA as a means of obtaining access to ConcealFab's confidential and proprietary business information, which it has since used to unfairly compete. Sabre counterclaims that it was fraudulently induced to enter the LOA, which it says ConcealFab then breached. This Motion asks the Court to enter judgment as a matter of law regarding one of the claims ConcealFab asserts, and one of the counterclaims Sabre asserts.

Specifically, before it terminated the LOA, and without first obtaining a security agreement from ConcealFab, Sabre recorded a UCC-1 Financing Statement ("UCC Lien") with the Colorado Secretary of State encumbering all of ConcealFab's intellectual property. Sabre has since refused to terminate the UCC Lien. ConcealFab seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the UCC Lien is invalid because the Uniform Commercial Code requires a secured party to obtain an authenticated security agreement before it records any lien. *See* Amended Complaint [Dkt 68], Eighth Claim for Relief. Summary judgment in ConcealFab's favor would significantly reduce the issues to be addressed at trial by eliminating one claim for relief and establishing a factual predicate for three other claims. *See* Dkt 68, ¶ 56(d) (Sabre breached the LOA by wrongfully recording the UCC Lien), ¶¶ 74(c) & 80(a)-(b) (Sabre tortiously interfered with ConcealFab's relationships by wrongfully recording UCC Lien).

Additionally, Sabre claims it was fraudulently induced to enter the LOA based upon projections of future profitability, which are not actionable, and other alleged representations that ConcealFab corrected before Sabre relied upon them. *See* Answer to Amended Complaint and Counterclaims [Dkt 70], First Counterclaim. ConcealFab asks this Court to enter summary judgment in its favor and against Sabre because the record is devoid of any evidence to support the fraudulent inducement counterclaim. Summary judgment in ConcealFab's favor would significantly reduce the issues to be addressed at trial by eliminating the primary counterclaim for relief and a lot of evidence regarding the parties' back and forth communications before the LOA was executed.

## II. STANDARD OF REVIEW

Summary judgment should enter if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the non-moving party, and a fact is material if it might affect the outcome of the case under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-671 (10th Cir. 1998). However, when the movant does not bear the ultimate burden of persuasion at trial, the movant may make its *prima facie* showing of no genuine issue of material fact simply by showing a lack of evidence on an essential element of the non-movant's claim. *See id.* The burden then shifts to the non-movant to put forth sufficient evidence for each

essential element of its claim. *See Anderson*, 477 U.S. at 248. The non-movant must go beyond the allegations of its pleadings and provide admissible evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Conclusory statements based merely on conjecture, speculation or subjective belief are not competent evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## III. SABRE'S UCC LIEN SHOULD BE DECLARED INVALID

ConcealFab seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the UCC Lien is invalid because the Uniform Commercial Code requires a secured party to obtain an authenticated security agreement before it records any lien. The undisputed facts establish that Sabre did not have a security agreement at the time it recorded the UCC Lien, and its conduct both after terminating the LOA and in this lawsuit prevents it from claiming otherwise now.

### A. Burden of Proof for Declaratory Judgment Claim Regarding UCC Lien

ConcealFab bears the burden of establishing that it is entitled to a declaratory judgment in its favor and against Sabre regarding the invalidity of the UCC Lien.

### B. Elements of Declaratory Judgment Claim Regarding Invalidity of UCC Lien

The elements of a declaratory judgment claim under 28 U.S.C. § 2201 are (1) an actual controversy between parties having adverse interests, of (2) sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).

Regarding the specific legal issue for which ConcealFab seeks entry of judgment, a person may file a UCC Lien only if the debtor authorizes the filing in an authenticated record, or by authenticating or becoming bound as debtor by a security agreement. *See* C.R.S. § 4-9-509(a)(1) & (b).

## C. Undisputed Facts Regarding Invalid UCC Lien

The following undisputed facts establish that ConcealFab is entitled to a declaration that the UCC Lien Sabre recorded is invalid because Sabre recorded it when it had no underlying security agreement:

1. <u>Element 1: There Is an Actual Controversy Between the Parties</u>

    a. ConcealFab contends that Sabre wrongfully recorded a UCC Lien with the Colorado Secretary of State. *See* Dkt 68, ¶¶ 56(d), 74(c), 80 & 91. Sabre denies this contention. *See* Dkt 70, Answer ¶¶ 56, 74, 80 & 91.

2. <u>Element 2: There is Sufficient Reason to Issue a Declaratory Judgment</u>

    a. On July 24, 2015, ConcealFab demanded that Sabre terminate its UCC Lien. *See* Dkt 68, ¶ 44.

    b. To date, Sabre has refused to terminate its UCC Lien. *See* Dkt 70, Answer ¶ 44.

3. <u>Element 3: The Debtor Has Authenticated a Security Agreement</u>

    a. The LOA stated, "If for some reason the LOA is terminated, the amounts paid . . . would revert to a 1-year note due Sabre guaranteed by all IP . . ." *See* ConcealFab Appendix ("CF Appx"), p. 000009-10—LOA, ¶¶ 3(b)(ii)(4) & ¶ 3(c)(2).

    b. On May 27, 2015, Sabre recorded a UCC Lien with the Colorado Secretary of State claiming a security interest in all of ConcealFab's intellectual property. *See* Dkt 68, ¶ 36; Dkt 70, Answer ¶ 36 & Counterclaim ¶ 50; Plaintiff's Answer to Defendants' Counterclaims [Dkt 71], ¶ 50.

c. On May 28, 2015, Sabre delivered a draft promissory note to ConcealFab. *See* Dkt 70, Counterclaim ¶ 47; Dkt 71, ¶ 47.

d. ConcealFab did not sign the draft promissory note. *See* Dkt 70, Counterclaim ¶ 48; Dkt 71, ¶ 48.

e. Defendants terminated the LOA on June 3, 2015. *See* Dkt 68, ¶ 37; Dkt 70, Answer ¶ 37 & Counterclaim ¶ 49; Dkt 71, ¶ 49.

f. On July 24, 2015, ConcealFab demanded that Sabre terminate its UCC Lien. *See* Dkt 68, ¶ 44.

g. To date, Sabre has refused to terminate its UCC Lien. *See* Dkt 70, Answer ¶ 44.

**D. The UCC Lien Should be Declared Invalid**

The Uniform Commercial Code provides that a security interest is enforceable against the debtor and third parties with respect to collateral only if, among other conditions, the debtor has authenticated a security agreement that provides a description of the collateral. *See* C.R.S. § 4-9-203(b)(3)(A); *see also Compass Bank v. Kone*, 124 P.3d 500, 502 (Colo. App. 2006) (a security interest is enforceable with respect to collateral only if (1) value has been given, (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party, and (3) the debtor has authenticated a security agreement that provides a description of the collateral). The undisputed facts establish that Sabre recorded its UCC Lien without the requisite underlying security agreement, and the lien should be declared invalid as a matter of law.

The LOA itself is not a security agreement authorizing Sabre to record a UCC Lien. The LOA, by its express terms, did not "revert" to a note unless or until the LOA was terminated. *See Lowell Staats Min. Co. v. Pioneer Uravan, Inc.*, 596 F. Supp.

1428, 1430 (D. Colo. 1984) (where the evidence of agreement between the parties is an unambiguous document, the determination of the meaning and effect of its provisions is a question of law for the court, proper for resolution by summary judgment). Thus, when Sabre recorded its UCC Lien on May 27, 2015, it had no security agreement on which to base its claim of right to ConcealFab's intellectual property because there could not have been a "note" until at least June 3, 2015, when Sabre terminated the LOA. *See also* C.R.S. § 4-9-509(a)(1) & (b) (a debtor authorizes a creditor to file a financing statement by "authenticating or becoming bound as debtor by a security agreement"). Sabre's UCC Lien is therefore invalid.

The conclusion that the LOA was not an enforceable security agreement when Sabre recorded its UCC Lien is further evidenced by Sabre's own conduct, both after it recorded the lien and in this lawsuit. Specifically, on May 28, 2015—the day after Sabre recorded the UCC Lien—Sabre sent ConcealFab a promissory note for execution. *See* Dkt 70, Counterclaim ¶ 47; Dkt 71, ¶ 47. By demanding that ConcealFab execute a separate promissory note, Sabre conceded that the LOA was not itself an enforceable security agreement when it recorded the UCC Lien. Moreover, Sabre now claims in this lawsuit that ConcealFab breached the LOA by refusing to execute the promissory note, *see* Dkt 70, Counterclaim ¶¶ 79(b) & (c), and in so doing, concedes that the LOA is not an enforceable security agreement at any time, even after termination. In other words, ConcealFab could not have breached the LOA by refusing to execute a promissory note as Sabre contends if the LOA itself were an enforceable security agreement authorizing Sabre to record a UCC Lien. The lack of an authenticated security agreement at the

time Sabre recorded its UCC lien renders the lien invalid, and this Court should declare as much as a matter of law.

## IV. SABRE'S FRAUDULENT INDUCEMENT COUNTERCLAIM SHOULD BE DISMISSED

Sabre seeks an award of damages on the theory that it was fraudulently induced to enter the LOA because ConcealFab misrepresented that it "had significant and lucrative upcoming purchase orders," including a contract to provide engineering services to Hill Air Force Base in Utah. *See* Dkt 70, Counterclaim ¶¶ 14, 15, 21, 22, 57 (a), (b) & (c). Sabre also alleges that it was fraudulently induced because ConcealFab mispresented that it had 100 percent approval from its shareholders to enter the LOA. *See* Dkt 70, Counterclaim ¶¶ 25, 31, 33, 34 & 57(d). However, these alleged misrepresentations are either inadequate as a matter of law or were expressly contradicted by ConcealFab before Sabre entered the LOA such that Sabre could not have actually or justifiably relied upon them. Accordingly, Sabre's fraudulent inducement counterclaim should be dismissed with prejudice and as a matter of law.

### A. Burden of Proof for Fraudulent Inducement Counterclaim

Sabre must prove each element of its counterclaim by a preponderance of the evidence. *See* CJI-Civil 19:1; *see also Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599, 601 (Colo. 1984) (in general, a party asserting a claim in tort has the burden of proving that claim by a preponderance of the evidence).

### B. Elements of Fraudulent Inducement Counterclaim

A federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994); *see also* Dkt 70,

Counterclaim ¶ 5; Dkt 71, ¶ 5. Under Colorado law, the elements of a fraudulent inducement counterclaim are: (1) the plaintiff's misrepresentation of a material fact; (2) the defendant's justifiable reliance on that misrepresentation; and (3) such reliance resulting in damage to the defendant. *See Kirzhner v. Silverstein*, Civil Action No. 09-cv-02858-CMA-BNB, 2011 WL 4382650, at *9 (D. Colo. Sept. 20, 2011) (citing *J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007)).

**C. Undisputed Facts Regarding Fraudulent Inducement Counterclaim**

The following undisputed facts preclude Sabre from proving at least two of the three elements of its fraudulent inducement counterclaim:

1. Element 1: The Plaintiff Made a Misrepresentation of Material Fact

    a. For the purposes of this Motion only, it is undisputed that ConcealFab made representations regarding anticipated future contracts and revenue to Sabre before Sabre executed the LOA.

    b. ConcealFab informed Sabre that "[w]e received an affirmative vote from a majority [of] both the Preferred class standalone and the Common plus Preferred classes combined" on March 12, 2015. *See* CF Appx, p. 000012-13—March 12, 2016 email;[1] p. 000032—Defendants' Responses and Objections to Plaintiff's Third Set of Written Discovery Requests to Defendants ("Third Discovery Responses"), Response to Request for Admission No. 2.

2. Element 2: The Defendant Justifiably Relied Upon that Misrepresentation

    a. ConcealFab informed Sabre that it had lost the Hill Air Force Base Contract on March 6, 2015. *See* CF Appx, p. 000037—March 6,

[1] It is undisputed that the March 12, 2015 email labeled SABRE000406 is genuine. *See* CF Appx, p. 000017— Defendants' Responses and Objections to Plaintiff's Fourth Set of Written Discovery Requests ("Fourth Discovery Responses"), Response to Request for Admission No. 2.

2015 email;[2] p. 000032—Third Discovery Responses, Response to Request for Admission No. 1.

b. ConcealFab delivered an executed version of the LOA to Sabre on March 12, 2015. *See* CF Appx, p. 000038-49—March 12, 2015 email.[3]

c. Later on March 12, 2015, ConcealFab informed Sabre that "[w]e received an affirmative vote from a majority [of] both the Preferred class standalone and the Common plus Preferred classes combined." *See* CF Appx, p. 000012-13—March 12, 2016 email;[4] p. 000032—Third Discovery Responses, Response to Request for Admission No. 2.

d. Sabre executed the LOA on March 13, 2015. *See* Dkt 70, Counterclaim ¶ 23; Dkt 71, ¶ 23.

## D. The Fraudulent Inducement Counterclaim Should be Dismissed

### 1. <u>ConcealFab Did Not Make Any Misrepresentations of Past or Present Fact</u>

With respect to the first element of the counterclaim, a party claiming fraudulent inducement must show that the opposing party made a false representation of a **past or present fact**. *See Mosher v. Long Beach Mortgage Co.*, Civil Action No. 12-cv-0729-WJH-MEH, 2014 WL 287441, at *3 (D. Colo. Jan. 27, 2014) (citing *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 525 (Colo. App. 2006)) (emphasis added). Under Colorado law, projections regarding future profitability are "mere puffery" which "cannot be the basis of any misrepresentation claim." *See Steak n Shake Enterprises, Inc. v.*

---

[2] It is undisputed that the March 6, 2015 email labeled SABER000309 is genuine. *See* CF Appx, p. 000017—Fourth Discovery Responses, Response to Request for Admission No. 1.

[3] The March 12, 2015 email and attachment labeled CONCEALFAB 003211-3222 is genuine. *See* CF Appx, p. 000051—Affidavit of Jonathan Fitzhugh ("Fitzhugh Affidavit"), ¶ 9.

[4] *See* footnote 1 above.

*Globex Co., LLC*, 110 F.Supp.3d 1057, 1083 (D. Colo. 2015). Projections are not representations of past or existing facts, but are representations regarding the future, which are not actionable. *Id*; see *also United Fire & Cas. Co. v. Nissan Motor Corp. in U.S.A.*, 433 P.2d 769, 771 (Colo. 1967) (a false statement about a future event does not constitute an actionable misrepresentation); *Burman v. Richmond Homes, Ltd.*, 821 P.2d 913, 921 (Colo. App. 1991) (statement that is only an expression of opinion about the happening of a future event is not an actionable fraud).

Sabre, however, bases almost its entire fraudulent inducement counterclaim on predictions, projections and forecasts regarding future events. *See, e.g.,* Dkt 70, Counterclaim ¶¶ 14, 15, 21 & 22 & 57(b). In response to an interrogatory asking it to identify all misrepresentations upon which it allegedly relied, Sabre identified only predictions regarding future contract opportunities and future revenue projections. *See* CF Appx, p. 000026-28—Third Discovery Responses, Response to Interrogatory No. 3 (identifying a February 17, 2015 email to which charts with projected revenue after March 2015 were attached, a February 20, 2015 email referencing anticipated revenue in "mid/late March," and an April 2015[5] email with forecasts for May, June, July and August of 2015); p. 000050-51—Fitzhugh Affidavit, ¶¶ 3-6. The prospective nature of these forecasts is further demonstrated by the fact that they predicted contract opportunities and revenue projections for divisions that did not even exist yet. *See* CF

---

[5] In addition to containing mere projections regarding future profitability, the April 21, 2015 email Sabre identified was sent more than a month **after** Sabre entered the LOA. *See* Sec. IV(C)(2)(d) above. As a result, it could not have relied upon the April 21, 2015 email when it decided to enter the LOA.

Appx, p. 000050-51—Fitzhugh Affidavit, ¶¶ 3 & 5. Rather, these divisions would be created only after the LOA was executed by all parties. *See id.*

ConcealFab also asked Sabre to identify any and all misrepresentations it allegedly made regarding existing purchase orders. *See* CF Appx, p. 000028-29—Third Discovery Responses, Interrogatory No. 4. In response, Sabre identified a single chart that identified the "probability," "timing for win" and "timing for revenue generation" for contracts that had not yet been awarded. *See* CF Appx, p. 000028-29—Third Discovery Responses, Response to Interrogatory No. 4; p. 00053—ConcealFab Sales Pipeline; p. 000051—Fitzhugh Affidavit, ¶ 5. And, again, the spreadsheet identified opportunities for divisions that would be created only after the LOA was executed by all parties. *See* CF Appx, p. 000050-51—Fitzhugh Affidavit, ¶¶ 3 & 5. Sabre, therefore, has failed to identify a single misrepresentation by ConcealFab regarding its past or existing contracts, or its past or existing revenues, in support of its fraudulent inducement counterclaim. As a result, its counterclaim must fail as a matter of law.

The only statement of past or present fact Sabre has ever identified in connection with its fraudulent inducement counterclaim is its allegation that ConcealFab said it had unanimous shareholder approval to enter the LOA when not all of its shareholders had actually voted in favor of the deal. *See* Dkt 70, Counterclaim ¶¶ 25, 31, 33, 34 & 57(d). However, it is undisputed that ConcealFab did not tell Sabre it had unanimous shareholder approval. Rather, on March 12, 2015, ConcealFab informed Sabre that a "majority" of two groups of shareholders had voted in favor of the LOA. *See* CF Appx, p. 000012-13—March 12, 2016 email; p. 000032—Third Discovery Responses,

Response to Request for Admission No. 2; p. 000051—Fitzhugh Affidavit, ¶ 10. Accordingly, the fraudulent inducement counterclaim should be dismissed as a matter of law because Sabre cannot establish that ConcealFab made a misrepresentation regarding a past or present material fact.

2. <u>Sabre Did Not Rely Upon Any Misrepresentations of Past or Present Fact</u>

The fraudulent inducement counterclaim should also be dismissed as a matter of law because Sabre did not actually or justifiably rely on any misrepresentation of past or present fact. Sabre contends ConcealFab fraudulently induced Sabre to enter the LOA by misrepresenting that ConcealFab would be awarded a lucrative contract with Hill Air Force Base in March of 2015. *See* Dkt 70, Counterclaim ¶¶ 15, 22 & 57(b). This is a prediction regarding future events that is not actionable under Colorado law. *See* Sec. IV(d)(1) above. But even if it were actionable, Sabre's own internal correspondence confirms that ConcealFab informed Sabre that it had lost the Hill Air Force Base contract on March 6, 2015, **six days before** Sabre executed the LOA. *See* CF Appx, p. 000037—March 6, 2015 email; p. 000032—Third Discovery Responses, Response to Request for Admission No. 1. In other words, Sabre knew the Hill Air Force Base contract had not been awarded to ConcealFab before it signed the LOA. Thus, Sabre could not have actually or justifiably relied upon the award of the Hill Air Force Base contract in entering the LOA.

Similarly, Sabre contends ConcealFab fraudulently induced Sabre to enter the LOA by falsely representing that ConcealFab had obtained unanimous consent from its shareholders to enter the LOA. *See* Dkt 70, Counterclaim ¶¶ 25, 31, 33, 34, 44 & 57(d).

Again, however, ConcealFab informed Sabre that "[w]e received an affirmative vote from a majority [of] both the Preferred class standalone and the Common plus Preferred classes combined" on March 12, 2015, **one day before** Sabre executed the LOA. *See* CF Appx, p. 000012-13—March 12, 2015 email; p. 000032—Third Discovery Responses, Response to Request for Admission No. 2; p. 000051—Fitzhugh Affidavit, ¶ 10. In other words, Sabre knew that a majority—but not all—of ConcealFab's shareholders had approved the LOA before it signed the LOA, and it signed the LOA anyway. Sabre cannot now claim that it relied upon any representation of unanimous ConcealFab shareholder approval when it decided to enter the LOA.

Sabre nonetheless contends that it believed ConcealFab had unanimous approval from its shareholders because ConcealFab executed the LOA, which Sabre says required unanimous approval from ConcealFab shareholders.[6] *See* CF Appx, p. 000032-33—Third Discovery Responses, Response to Request for Admission No. 3. On March 12, 2015, ConcealFab sent an executed version of the LOA to Sabre. *See* CF Appx, p. 000038-49—March 12, 2015 email. Seven hours later on that same day, ConcealFab informed Sabre that a majority of its shareholders had authorized ConcealFab to enter the LOA. *See* CF Appx, p. 000012-13—March 12, 2016 email; p. 000032—Third Discovery Responses, Response to Request for Admission No. 2; p. 000051—Fitzhugh Affidavit, ¶ 10. On March 13, 2015, Sabre executed the LOA. *See*

[6] ConcealFab disagrees that the LOA required unanimous shareholder approval. However, this disagreement regarding the interpretation of the LOA is not an issue of material fact precluding summary judgment because ConcealFab's affirmative representation to Sabre that it had something less than unanimous shareholder consent before Sabre entered the LOA rendered any alleged reliance by Sabre to the contrary unjustifiable as a matter of law.

Dkt 70, ¶ 32; Dkt 71, ¶ 32. To the extent Sabre claims the LOA itself constitutes a misrepresentation of unanimous ConcealFab shareholder approval, ConcealFab corrected that information **before** Sabre executed the LOA. Reliance is not justifiable if another person of similar intelligence, education or experience would not have relied on the alleged representation. *See J.A. Walker Co., Inc. v. Cambria Corp*., 159 P.3d 126, 132(Colo. 2007). Sabre's contention now that it relied upon one representation, but not another (contradictory and more proximate) representation, is not justifiable reliance—it is deliberate obstinance that is at odds with what a party of similar intelligence, education or experience would have done. The fraudulent inducement counterclaim should be dismissed with prejudice and as a matter of law because Sabre has failed to identify evidence supporting the elements of the counterclaim.

WHEREFORE, Plaintiff ConcealFab Corporation respectfully requests that this Court enter judgment in its favor and against Defendants Sabre Industries, Inc. and Midwest Underground Technology, Inc. regarding its Eighth Claim for Relief by declaring the UCC-1 Financing Statement they recorded invalid as a matter of law; and enter judgment in its favor and against Defendants Sabre Industries, Inc. and Midwest Underground Technology, Inc. regarding their First Counterclaim by dismissing the counterclaim with prejudice and as a matter of law; and for such other and further relief as the Court deems appropriate.

Dated: April 28, 2017.

Respectfully submitted,

*s/Angela D. DeVine*

Thomas M. Haskins III
Martin D. Beier
Angela D. DeVine
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO 80206
Phone: (303) 399-3000
FAX: (303) 399-2650
haskinst@s-d.com
beierm@s-d.com
devinea@s-d.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on April 28, 2017 a true and correct copy of **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was served via email to the following:

Jeana L. Goosmann
Elizabeth Lally
Goosmann Law Firm, PLC
410 5th Street
Sioux City, IA 51101

*s/Chris Allen*

FW8162