**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01793-CMA-KLM

CONCEALFAB CORPORATION, a Colorado corporation,

Plaintiff,

v.

SABRE INDUSTRIES, INC., a Delaware corporation, and MIDWEST UNDERGROUND TECHNOLOGY, INC., an Illinois corporation,

Defendants.

---

## FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

The Final Pretrial Conference ~~occurred on~~ was scheduled for November 28, 2017. Angela D. DeVine appeared on behalf of Plaintiff ConcealFab Corporation ("ConcealFab"). Anthony L. Osborn appeared on behalf of Defendants Sabre Industries, Inc., ("Sabre") and Midwest Underground Technology, Inc. ("MUTI"). (KLM)

## 2. JURISDICTION

This Court has jurisdiction over the subject matter and parties to this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court also has jurisdiction to render declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## 3. CLAIMS AND DEFENSES

a. **Plaintiff's Statement of Claims:** ConcealFab and Sabre/MUTI are competitors that discussed combining their businesses. In connection with those discussions, ConcealFab and Sabre/MUTI entered into several agreements: (1) a Mutual Non-Disclosure Agreement ("NDA") requiring both parties to keep in confidence all "Confidential Information" they learned during their discussions, and prohibiting either party from using such information for any purpose other than evaluating and engaging in discussion regarding their potential business relationship; (2) an Employment Agreement with ConcealFab Chief Executive Officer Jonathan Fitzhugh in which Sabre/MUTI agreed to pay him a signing bonus of $125,000 within 30 days of being hired and $300,000 in the event he was terminated without cause; and (3) a Term Sheet outlining the key categories and terms from which a definitive agreement to combine the two businesses would be developed. Following execution of the Term Sheet and several weeks of inactivity by Sabre/MUTI, however, Sabre/MUTI informed ConcealFab that it wanted to re-structure the agreement. Sabre/MUTI proposed a Licensing Operating Agreement ("LOA"), purportedly to allow the companies to operate jointly until a definitive agreement to combine the two businesses was in place. In actuality, Sabre/MUTI proposed the LOA in order to gain access and rights to ConcealFab's Confidential Information and trade secrets without the necessity of performing pursuant to the Term Sheet. After more than two months of access to ConcealFab's Confidential Information and trade secrets—and without performing its duties under the LOA—Sabre/MUTI terminated the LOA for pretextual reasons. Since then, Sabre/MUTI has

used ConcealFab's Confidential Information and trade secrets to pursue ConcealFab's business opportunities for itself. ConcealFab will assert the following claims at trial:

1. Breach of the NDA, LOA and Employment Agreement;
2. Breach of the implied covenant of good faith and fair dealing implied in the LOA;
3. Breach of fiduciary duty arising from their joint venture under the LOA;
4. Misappropriation of trade secrets;
5. Tortious interference with contractual and prospective business relations;
6. Fraud in the inducement;
7. Unjust enrichment; and
8. Declaratory judgment that a UCC-1 Financing Statement recorded by Sabre was invalid.

ConcealFab withdraws its claim for trade disparagement.

With respect to Sabre/MUTI's counterclaims, ConcealFab will assert the following affirmative defenses at trial:

1. The counterclaims are barred in whole or in part by Defendants' failure to satisfy one or more conditions precedent;
2. The counterclaims are barred in whole or in part by the doctrines of waiver, estoppel and laches;
3. The counterclaims are barred in whole or in part by the doctrine of accord and satisfaction;

4. The counterclaims are barred in whole or in part by Sabre/MUTI's own prior breaches of contract;

5. The counterclaims are barred in whole or in part by the economic loss rule;

6. The counterclaims are barred in whole or in part by the doctrine of unclean hands;

7. The counterclaims are barred in whole or in part by Sabre/MUTI's failure to mitigate their damages, if any.

b. **Defendants' Statement of Claims and Defenses:** ConcealFab and Sabre/MUTI (collectively the "Parties") each participate in the Small Cell, Distributed Antennae System and outdoor Distributed Antennae System segments of the telecom market. Each has product lines, customer relationships, and intellectual property. In August 2014, the Parties executed an NDA. From February 2015 until June 2015, the Parties worked together pursuant to: (1) the NDA, (2) a Term Sheet and (3) an LOA that were to allow the Parties to operate jointly until a definitive agreement to combine the two businesses was in place. Under the LOA, ConcealFab agreed to give a newly-created Sabre segment called Sabre Engineered Product Group ("Sabre EPG") exclusive use of all its intellectual property, including processes, designs and systems. Sabre acted in good-faith during the negotiation of the NDA, Term Sheet, and LOA as well as the Employment Agreement. Sabre provided ConcealFab with a significant and much needed cash infusion to continue operations and Sabre made earnest and good-faith attempts to combine the Parties' operations, which included at least two site visits

by Sabre to ConcealFab in April and May 2015 as well as multiple conferences between the Parties. In spite of its efforts to combine the Parties' operations, Sabre came to realized that it could not successfully combine ConcealFab's operations with its own. On June 3, 2015, Sabre delivered to ConcealFab a letter terminating the cooperative arrangement.

Sabre/MUTI and ConcealFab Chief Executive Officer Jonathan Fitzhugh also spent significant time negotiating, but never fully executed an Employment Agreement. Sabre/MUTI and Mr. Fitzhugh exchanged no fewer than eleven (11) drafts of the Employment Agreement, and every draft of the Employment Agreement contained substantially the same language as Paragraph 1 of the "final," non-red line version:

> "1. **Effective Date**: ....This Agreement shall automatically terminate without any action on the part of any person and be void *ab initio* if the Asset Purchase Agreement is terminated in accordance with its terms, and neither Sabre nor any other person shall have any liability to Employee under this Agreement if the Closing (as defined in the Stock Purchase Agreement) does not occur."

Over the course numerous drafts of the Employment Agreement, the only change to Paragraph 1 was to strike the word "Stock" from line four and to replace it with "Asset." Paragraph 31 of the Employment Agreement contains an integration clause stating that it is the complete agreement between the Parties concerning Fitzhugh's employment. Section 4 of the LOA amends Paragraph 25(c) ("'Definition of Cause' and 'Good Reason'") of the Employment Agreement. The LOA does not amend or alter Paragraph 1 of the Employment Agreement. The Parties anticipated a future, definite agreement wherein Sabre would purchase ConcealFab's assets, outstanding

stock, or both; and, if such a purchase did not occur, the Employment Agreement was void *ab initio*. Neither an APA or SPA occurred between the Parties, and, accordingly, the Employment Agreement is void *ab initio*.

On August 19, 2015, ConcealFab filed its initial Complaint against Sabre related to the failed cooperative arrangement between the Parties, and, alleging:

1. Breach of the NDA, LOA and Employment Agreement;
2. Breach of the implied covenant of good faith and fair dealing implied in the LOA;
3. Breach of fiduciary duty arising from their joint venture under the LOA;
4. Misappropriation of trade secrets;
5. Tortious interference with contractual and prospective business relations;
6. Fraud in the inducement;
7. Unjust enrichment; and
8. Declaratory judgment that a UCC-1 Financing Statement recorded by Sabre was invalid.[1]

Sabre/MUTI has filed a Motion for Partial Summary Judgment [Dkts. 97 & 113] as to a majority of ConcealFab's claims. To the extent that ConcealFab's claims against Sabre/MUTI survive summary judgment, Sabre/MUTI will assert the following affirmative defenses at trial:

---

[1] ConcealFab also brought a claim against Sabre for trade disparagement, which has now withdrawn (see above, *Plaintiff's Statement of Claims and Defenses*).

1. The claims are barred in whole or in part by the failure of either the Parties, combined, or Conceal, individually, to satisfy one or more conditions precedent;

2. The claims are barred in whole or in part by ConcealFab's own prior breaches of contract;

3. The claims barred in whole or in part by the economic loss rule;

4. The claims are barred in whole or in part by ConcealFab's failure to mitigate their damages, if any;

5. The claims are barred in whole or in part by the doctrine of unclean hands or *in pari delicto*; and

6. ConcealFab's damages, if any, were caused in whole or in part by a person or persons that are not parties to this lawsuit.

ConcealFab has also brought a Motion for Partial Summary Judgement. [Dkts. 94 & 110]. Assuming MUTI/Sabre counterclaims against ConcealFab survive summary judgment, ConcealFab will assert the following counter-claims against ConcealFab at trial:

1. Fraudulent Inducement;
2. Unjust Enrichment;
3. Trade Disparagement;
4. Tortious Interference with Contractual Relations; and
5. Breach of Contract.

## 4. STIPULATIONS

### A. The Following Facts Are Undisputed:

1. ConcealFab is a Colorado corporation with a principal place of business at 3525 North Cascade Avenue, Colorado Springs, Colorado 80907.

2. Sabre is a Delaware corporation with a principal place of business at 8653 East Highway 67, Alvarado, Texas 76009.

3. MUTI is an Illinois corporation authorized to conduct business in Colorado, with a principal place of business at 2626 Midwest Court, Champaign, Illinois 61822.

4. MUTI is a wholly-owned subsidiary or division of Sabre.

5. ConcealFab and Sabre/MUTI are competitors in the Small Cell, Distributed Antennae System and outdoor Distributed Antennae System segments of the telecom market, and each has product lines, customer relationship and intellectual property.

6. ConcealFab and Sabre/MUTI began discussions in 2014 to combine the two businesses.

7. In August 2014, ConcealFab and Sabre/MUTI executed a Mutual Non-Disclosure Agreement.

8. From November 2014 to February 2015, ConcealFab and Sabre/MUTI exchanged drafts of a Term Sheet outlining the key terms from which a definitive agreement to combine the two entities would be developed.

9. ConcealFab and Sabre/MUTI executed a Term Sheet on or about February 3, 2015.

10. ConcealFab informed Sabre/MUTI that it lost an opportunity to provide services to Hill Air Force Base on March 6, 2015.

11. On March 12, 2015, ConcealFab informed Sabre that "[w]e received an affirmative vote from a majority [of] both the Preferred class standalone and the Common plus Preferred classes combined."

12. Sabre executed the LOA on March 13, 2015.

13. Sabre did not pay the March 2015 "Employee/Contractor" payment due under the LOA until May 5, 2015.

14. ConcealFab accepted the March 2015 "Employee/Contractor" payment in May 2015.

15. Sabre did not pay the April 2015 "Employee/Contractor" payment due under the LOA until May 5, 2015.

16. ConcealFab accepted the $12,000 April 2015 "Employee/Contractor" payment in May 2015.

17. On May 27, 2015, Sabre/MUTI recorded a UCC-1 Financing Statement with the Colorado Secretary of State, alleging a right in "all right, title and interests of [ConcealFab] in any Intellectual Property."

18. On May 28, 2015, Sabre delivered a draft promissory note to ConcealFab.

19. ConcealFab did not sign the draft promissory note.

20. No promissory note exists between Sabre/MUTI and ConcealFab.

21. Sabre terminated the Term Sheet and LOA on June 3, 2015.

22. On July 24, 2015, ConcealFab demanded that Sabre terminate its UCC-1

Financing Statement.

23. Sabre terminated its UCC-1 Financing Statement on May 18, 2017.

**B. ~~Plaintiff asked Defendants to Stipulate but Defendants Refused:~~**

1. Sabre never paid the May 2015 "Employee/Contractor" payment due under the LOA.

2. Sabre/MUTI never paid the $27,310.60 described as "CF Payroll 6/1/2015 – 6/7/2015 estimated" on the document previously produced and labeled SABRE00689.

3. Sabre/MUTI never paid the $60,326.53 described as "AP Unpaid (March through May 31)" on the document previously produced and labeled SABRE00689.

**C. Plaintiff asked Defendants to Stipulate but Plaintiff Refused:**

1. Michael Slattery ("Slattery") founded ConcealFab.

2. In March 2013, Mr. Fitzhugh replaced Mr. Slattery as the CEO of ConcealFab.

3. In September 2014, Mr. Fitzhugh met with Sabre executives to discuss a potential strategic alliance or joining of the businesses.

4. Mr. Slattery ceased to be an employee of ConcealFab in November of 2014.

5. Mr. Slattery and ConcealFab executed a Separation Agreement and General Release and Consulting Agreement ("Consulting Agreement") on November 18, 2014.

Because the header in section C below is non-sensical and because the form of the Final Pretrial Order does not contemplate inclusion of this type of information, sections 4.B. and 4.C. are STRICKEN in their entirety. KLM

6. On January 7, 2015, ConcealFab gave Mr. Slattery written notice that his habit of being under the influence of marijuana at work violated federal law, its federal drug-free workplace policy, and could cause material harm to ConcealFab.

7. Sabre/MUTI and Mr. Fitzhugh began the process of exchanging drafts of a written Employment Agreement at least as soon as January 7, 2015.

8. The Term Sheet included a document entitled "Addendum A"

9. Pursuant to Addendum A of the Term Sheet, ConcealFab placed a potential lifetime value of $21 Million on the Hill AFB contract.

10. ConcealFab Informed Sabre/MUTI that it planned to appeal its failed bid to provide services to Hill Air Force Base.

11. ConcealFab appealed its failed bid to provide services to Hill Air Force Base.

12. Sabre executed the LOA on March 13, 2015.

13. On May 10, 2015, Mr. Fitzhugh informed Sabre executives and management that the Hill Air Force Base contract had a much smaller value than Conceal listed on Addendum A to the Term Sheet.

14. On May 10, 2015, Mr. Fitzhugh informed Sabre executives and management that the Hill Air Force Base RFP was initially released with a $7.9 Million estimated value.

15. Mr. Fitzhugh did not inform any Sabre representatives in charge of the negotiation of the Term Sheet and the LOA that the value of the contract was $7.9 Million while the negotiations of the Term Sheet and the LOA were ongoing.

16. Under the LOA, ConcealFab agreed to give a Sabre EPG exclusive use of all its intellectual property, including processes, designs and systems.

17. Mr. Fitzhugh and Sabre/MUTI exchanged multiple drafts of the Employment Agreement.

18. Mr. Fitzhugh was represented by legal counsel in the drafting of the Employment Agreement.

19. ConcealFab was represented by legal counsel in the drafting of the Employment Agreement.

20. The Employment Agreement was never fully executed by the Parties.

21. In April 2015, Joe McLaurin, Director of Production Reporting & Systems with Sabre Industries, visited ConcealFab's facility.

22. Mr. McLaurin made detailed suggestions regarding how to best integrate and streamline the Parties' production, engineering, and staffing.

23. Mr. McLaurin visited ConcealFab a second time in May 2015.

24. Mr. McLaurin again made specific recommendations in terms of combining and streamlining the Parties' operations.

25. During the pendency of the LOA, Sabre paid working capital and other expenses on behalf of ConcealFab or former ConcealFab employees.

26. Sabre made an initial deposit of prepaid licensing fees / capital infusion of $160,000.00 to ConcealFab.

27. Sabre/MUTI proposed and ConcealFab agreed to accept the "Employee/Contractor" payments contained in the LOA a manor different from that set out in the LOA.

28. ConcealFab and Sabre/MUTI never entered into an Asset Purchase Agreement ("APA").

29. ConcealFab and Sabre/MUTI never entered in a Stock Purchase Agreement ("SPA")

30. The LOA provides that in the event of termination of the agreement without an acquisition of ConcealFab by Sabre, and the licensing fees due to CFG from Sabre were insufficient to offset balances due to Sabre from CFG, the funds Sabre expended to ConcealFab and the new CFG entity for the "Employee/Contractor" obligation, as well as the initial deposit of $160,000 and other prepaid licensing fees/working capital contributions, were to revert to a 1-year note due Sabre, and guaranteed by a security interest in ConcealFab's Intellectual Property.

31. ConcealFab takes issue with certain items contained in the draft promissory note.

32. ConcealFab disagrees with Sabre/MUTI's inclusion of $27,310.60 in wages in the draft promissory note.

33. ConcealFab disagrees with Sabre/MUTI's inclusion of $60,326.53 in unpaid accounts payable in the draft promissory note.

~~34. ConcealFab has never proposed to Sabre/MUTI a draft promissory note containing the repayment amounts ConcealFab agrees are due and owing to Sabre/MUTI pursuant to the LOA.~~

## 5. PENDING MOTIONS

The following motions are currently pending:

a. Plaintiff's Motion for Partial Summary Judgment [Dkt 94] (filed April 28, 2017; Response [Dkt 104] filed May 18, 2017; Reply [Dkt 110] filed June 1, 2017); and

b. Defendants' Motion for Partial Summary Judgment Pursuant to Fed.R.Civ.P. 56 [Dkt 97] (filed April 28, 2017; Response [Dkt 106] filed May 19, 2017; Reply [Dkt 113] filed June 9, 2017).

## 6. WITNESSES

**a. Non-Expert Witnesses to be Called by Each Party:**

1. *Plaintiff's Non-Expert Witnesses*:

a. Witnesses who will be present at trial pursuant to Fed.R.Civ.P. 26(a)(3)(A):

- Jonathan Fitzhugh
  Chief Executive Officer
  ConcealFab Corporation
  3525 North Cascade Avenue
  Colorado Springs, CO 80907
  719-599-3400

  Mr. Fitzhugh will testify regarding, *inter alia*, the communications between the parties; communications among the ConcealFab Board of Directors; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA;

ConcealFab's performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; and ConcealFab's damages.

- Chris Odell
  1985 Craig Drive
  Colorado Springs, CO 80921

  Mr. Odell will testify regarding, *inter alia*, the communications between the parties; communications among the ConcealFab Board of Directors; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; ConcealFab's performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; and ConcealFab's damages.

b. Witnesses who may be present at trial pursuant to Fed.R.Civ.P. 26(a)(3)(A):

- Patrick Cochran
  Senior Vice President of Small Cell/DAS Total Solutions
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally
  Goosmann Law Firm
  17898 Burke St., Ste. 250
  Omaha, NE 68118
  402-502-8319

  Mr. Cochran may testify regarding, *inter alia*, communications between the parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA; the confidential information Sabre and/or MUTI obtained from ConcealFab during the pendency of the LOA; communications he had

with key accounts of ConcealFab after termination of the LOA; and Defendants' responses to written discovery questions.

- Richard Denton
  532 Concerto Drive
  Colorado Springs, CO 80906

  Mr. Denton may testify regarding, *inter alia*, Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; and ConcealFab's damages.

- Douglas Huff
  Current contact information unknown

  Mr. Huff may testify regarding, *inter alia*, the communications between the parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; ConcealFab's performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; and Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA.

- Carey Ellinghaus
  Current contact information unknown

  Mr. Ellinghaus and may testify regarding, *inter alia*, communications between the parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the Employment Agreement; and employees of ConcealFab becoming employees of Sabre and/or MUTI during the pendency of the LOA.

- Tim Rossetti
  Chief Financial Officer and Executive Vice President
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally
  Goosmann Law Firm
  17898 Burke St., Ste. 250

Omaha, NE 68118
402-502-8319

Mr. Rossetti may testify regarding, *inter alia*, the communications between the parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; ConcealFab's performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; and Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; and Defendants' responses to written discovery questions.

- Tony Sabatino
  President of Business Development
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally
  Goosmann Law Firm
  17898 Burke St., Ste. 250
  Omaha, NE 68118
  402-502-8319

  Mr. Sabatino may testify regarding, *inter alia*, the communications between the parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; ConcealFab's performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; and Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA.

- Peter Sandore
  Chief Executive Officer
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally
  Goosmann Law Firm
  17898 Burke St., Ste. 250
  Omaha, NE 68118
  402-502-8319

  Mr. Sandore may testify regarding, *inter alia*, the

communications between the parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; ConcealFab's performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; and Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA.

- Michael Slattery
  7870 Ravenstone Court
  Colorado Springs, CO 80919

  Mr. Slattery may testify regarding, *inter alia*, His communications with Sabre and/or MUIT, the reasons he challenged the Term Sheet and/or LOA, the claims he asserted against ConcealFAB and its Board of Directors in *Michael Slattery v. ConcealFab Corporation, Jonathan Fitzhugh, Duncan Stewart and Chris Odell*, El Paso County District Court, Case No. 2015CV31900.

- Duncan Stewart
  1015 Dolan Drive
  Monument, CO 80132

  Mr. Duncan may testify regarding, *inter alia*, the communications between the parties; communications among the ConcealFab Board of Directors; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; ConcealFab's performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; and ConcealFab's damages.

c. Witnesses who testimony is expected to be presented by means of a deposition pursuant to Fed.R.Civ.P. 26(a)(3)(B):

None.

2. ***Defendant's Non-Expert Witnesses:***

a. Witnesses who will be present at trial pursuant to Fed.R.Civ.P. 26(a)(3)(A):

- Jonathan Fitzhugh
  Chief Executive Officer
  ConcealFab Corporation
  3525 North Cascade Avenue
  Colorado Springs, CO 80907
  719-599-3400

  Mr. Fitzhugh's testimony is expected to be consistent with his deposition testimony, and his 30(b)(6) examination, given in the above-captioned litigation. He is further expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Fitzhugh is expected to testify regarding, *inter alia*, the communications between the Parties; communications among the ConcealFab Board of Directors; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; The Parties performance of the NDA, the Term Sheet, and the LOA; the Parties' alleged breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; ConcealFab's alleged damages; and ConcealFab's responses to written discovery requests.

- Chris Odell
  1985 Craig Drive
  Colorado Springs, CO 80921

  Mr. Odell's testimony is expected to be consistent with his deposition testimony, and his 30(b)(6) examination, given in the above-captioned litigation. He is further expected to testify as to his personal

background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Odell is expected to testify regarding, *inter alia*, the communications between the Parties; communications among the ConcealFab Board of Directors; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; The Parties performance of the NDA, the Term Sheet, and the LOA; the Parties' alleged breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; ConcealFab's alleged damages; and ConcealFab's responses to written discovery requests.

- Patrick Cochran
  Senior Vice President of Small Cell/DAS Total Solutions
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally
  Goosmann Law Firm
  17898 Burke St., Ste. 250
  Omaha, NE 68118
  402-502-8319

  Mr. Cochran is expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Cochran may testify regarding, *inter alia*, communications between the Parties; communications among Sabre and/or MUTI personnel; the Parties' performance of the NDA, the Term Sheet, and the LOA; the Parties' alleged breaches of the NDA, the Term Sheet, and the LOA; and Defendants' responses to written discovery requests.

- Scott Gay
  Project Manager
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally

Goosmann Law Firm
17898 Burke St., Ste. 250
Omaha, NE 68118
402-502-8319

Mr. Gay is expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Gay may testify regarding, *inter alia*, communications between the Parties; communications among Sabre and/or MUTI personnel; the Parties' alleged breaches of the NDA; and Defendants' responses to written discovery requests.

- Joe McLaurin
  Director of Reporting, Systems & Logistics
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally
  Goosmann Law Firm
  17898 Burke St., Ste. 250
  Omaha, NE 68118
  402-502-8319

  Mr. McLaurin is expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. McLaurin may testify regarding, *inter alia*, communications between the Parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; the Parties' performance of the NDA, the Term Sheet, and the LOA; the Parties' alleged breaches of the NDA, the Term Sheet, and the LOA; and Defendants' responses to written discovery requests.

- Tim Rossetti
  Chief Financial Officer and Executive Vice President
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally

Goosmann Law Firm
17898 Burke St., Ste. 250
Omaha, NE 68118
402-502-8319

Mr. Rossetti is expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Rossetti may testify regarding, *inter alia*, communications between the Parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; the Parties' performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; the Parties' alleged breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; Sabre/MUTI's damages; and Defendants' responses to written discovery requests.

b. Witnesses who may be present at trial pursuant to Fed.R.Civ.P. 26(a)(3)(A):

- Clay McGee
  Vice President of Finance
  Sabre Industries, Inc.
  c/o Elizabeth M. Lally
  Goosmann Law Firm
  17898 Burke St., Ste. 250
  Omaha, NE 68118
  402-502-8319

  Mr. McGee is expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. McGee may testify regarding, *inter alia*, communications between the Parties; communications among Sabre and/or MUTI personnel; the Parties' performance of

the the Employment Agreement, the Term Sheet, and the LOA; the Parties' alleged breaches of the Employment Agreement, the Term Sheet, and the LOA; Sabre/MUTI's damages, and Defendants' responses to written discovery requests.

- Douglas Huff
  805 Foxhollow Drive
  Milton, GA 30004

  Mr. Huff is expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Huff may testify regarding, *inter alia*, the communications between the parties; communications among Sabre and/or MUTI personnel; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; and Defendants' responses to written discovery requests.

- Richard Denton
  532 Concerto Drive
  Colorado Springs, CO 80906

  Mr. Denton's testimony is expected to be consistent with 30(b)(6) examination given in the above-captioned litigation. He is further expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Denton may testify regarding, *inter alia*, Sabre and/or MUTI's breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; and ConcealFab's damages.

- Duncan Stewart
  1015 Dolan Drive
  Monument, CO 80132

Mr. Stewart's testimony is expected to be consistent with his 30(b)(6) examination given in the above-captioned litigation. He is further expected to testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Duncan may testify regarding, *inter alia*, the communications between the parties; communications among the ConcealFab Board of Directors; the negotiation and terms of the NDA, the Employment Agreement, the Term Sheet, and the LOA; the Parties' performance of the NDA, the Employment Agreement, the Term Sheet, and the LOA; the Parties' breaches of the NDA, the Employment Agreement, the Term Sheet, and the LOA; communications with Michael Slattery; and ConcealFab's damages.

- Michael Slattery
  7870 Ravenstone Court
  Colorado Springs, CO 80919

  Mr. Slattery may testify as to his personal background; professional background; and history and business dealings with any of the named Parties and / or agents or representatives of any of the named Parties in the above-captioned litigation. Mr. Slattery may testify regarding, *inter alia*, his communications with Sabre and/or MUIT, the reasons he challenged the Term Sheet and/or LOA, the claims he asserted against ConcealFab and its Board of Directors in *Michael Slattery v. ConcealFab Corporation, Jonathan Fitzhugh, Duncan Stewart and Chris Odell*, El Paso County District Court, Case No. 2015CV31900; the claims ConcealFab asserted against him in *Michael Slattery v. ConcealFab Corporation, Jonathan Fitzhugh, Duncan Stewart and Chris Odell*; his Separation and General Release and Consulting Agreement with ConcealFab; his history of drug use.

c. Witnesses who testimony is expected to be presented by means of a deposition pursuant to Fed.R.Civ.P. 26(a)(3)(B).

None

b. List the expert witnesses to be called by each party: None.

## 7. EXHIBITS

a. The parties' Joint Exhibit List is attached as Exhibit 1.

b. Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than 30 days before trial. The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8. DISCOVERY

Discovery has been completed.

## 9. SPECIAL ISSUES

None.

## 10. SETTLEMENT

a. Counsel for the Parties participated in a settlement conference with Magistrate Judge Mix on November 8, 2016.

b. The participants in the settlement conference included counsel and party representatives.

c. The Parties were promptly informed of all offers of settlement.

d. Counsel for the Parties do not intend to hold future settlement conferences.

e. It appears from the discussion by all counsel that there is little possibility of

settlement at this time and prior to any rulings on the Parties' pending partial motions for summary judgment.

f. Counsel for the Parties considered ADR in accordance with D.C.COLO.LCivR.16.6.

## 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Fed.R.Civ.P. 68 Rule (Offer of Judgment). Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the Parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

a. Trial is to the Court.

b. Estimated Trial Time: Four Days.

c. Situs of Trial: Denver, Colorado.

d. Any other Orders pertinent to the trial proceedings: Counsel and the

parties should note that the procedures for setting and conducting trial and for further conferences before trial vary according to the district judge assigned to the case. The judges all have written procedures which can be obtained from the clerk's office.

DATED this 22nd day of November, 2017.

BY THE COURT

United States Magistrate Judge

APPROVED:

| | |
|---|---|
| *s/Angela D. DeVine* | *s/ Elizabeth Lally* |
| Thomas M. Haskins III | Jeana L. Goosmann |
| Martin D. Beier | Elizabeth Lally |
| Angela D. DeVine | Anthony L. Osborn |
| SILVER & DEBOSKEY, P.C. | Goosmann Law Firm, PLC |
| 1801 York Street | 410 5th Street |
| Denver, CO 80206 | Sioux City, IA 51101 |
| Phone: (303) 399-3000 | Phone: (712) 226-4000 |
| ATTORNEYS FOR PLAINTIFF | ATTORNEYS FOR DEFENDANTS |